IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-CR-00374 JAR SRW |
| | ) | |
| KENNETH C. SPARKS III, | ) | |
| | ) | |
| Defendant. | ) | |

**THE UNITED STATES OF AMERICA'S MOTION FOR PRETRIAL DETENTION**

The United States of America, by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Derek J. Wiseman, Assistant United States Attorney for said District, moves the Court, under Title 18, United States Code, Section 3141, *et seq.*, to order Defendant Kenneth C. Sparks III detained pending trial. In support of this motion, the United States provides the following.

**INTRODUCTION**

Over the course of a decade, Defendant Kenneth C. Sparks III abused his position as a church minister to steal over a million dollars and to commit egregious acts of sexual assault. Defendant persisted in his criminal conduct despite prior indictments, incarceration, and terms of judicial supervision. In fact, Defendant fled from judicial supervision so that he could steal the identities of unsuspecting parishioners in the Eastern District of Missouri and defraud the United States out of more than a million dollars. Through his own actions over the last decade, Defendant has demonstrated that he poses a serious risk of flight and that no conditions will assure his appearance or the safety of the community. Therefore, the United States respectfully moves this Court to detain Defendant prior to trial.

## BACKGROUND

Along with other co-conspirators, Defendant Sparks has been charged by a grand jury sitting in the Eastern District of Missouri in an eleven-count Indictment. In Count One, Defendant is charged with Wire Fraud Conspiracy, under Title 18, United States Code, Section 1349. In Counts Two through Nine, Defendant is charged with Wire Fraud, under Title 18, United States Code, Section 1343. In Counts Ten through Eleven, Defendant is charged with Aggravated Identity Theft, under Title 18, United States Code, Section 1028A. For the Wire Fraud counts (Counts One through Nine), each count carries a statutory maximum sentence of twenty years in prison. In addition, the Aggravated Identity Theft counts (Counts Ten through Eleven) each carry a two-year mandatory consecutive sentence. Under the United States Sentencing Guidelines, the United States estimates that Defendant will face a Guidelines Range of 212-259 months' incarceration.

As alleged in the Indictment, Defendant executed a years-long scheme to steal more than a million dollars in taxpayer money that was reserved for struggling small businesses during the worst days of the COVID-19 pandemic. To execute his fraud scheme, Defendant stole the identities of unsuspecting church parishioners so that he could have fraudulent Paycheck Protection Program ("PPP") loans taken out in their names. In doing so, Defendant convinced parishioners that he was an Apostle of God, whose actions and decrees could not be questioned. To further his million-dollar fraud scheme, Defendant also lied to parishioners and lenders about the fact that he was on parole for sexually assaulting a fourteen-year-old girl and under indictment for failing to register as a sex offender. Based on his lies and misrepresentations, Defendant was able to steal more than a million dollars in taxpayer money that he spent on payments to co-conspirators and extravagant purchases for himself.

## ARGUMENT

### I. Having the Means, Motive, and Propensity to Flee, Defendant Must Be Detained Because He Poses a Serious Risk of Flight and No Conditions Can Assure His Appearance.

Under the Bail Reform Act, a defendant must be detained where—as here—the case involves a serious risk of a defendant's flight, and no conditions can reasonably assure the defendant's appearance. *See* 18 U.S.C. § 3142(f)(2)(A) ("The judicial officer shall hold a [detention] hearing . . . in a case that involves - - a serious risk that such person will flee[.]"); 18 U.S.C. § 3142(e)(1) (the "judicial officer shall order the detention of the person . . . [i]f, after a [detention] hearing . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person").[1]

Applied here, Defendant poses a serious risk of flight because he has the means, motive, and propensity to flee from this prosecution. In addition, by continuing to break the law despite prior indictments, convictions, and terms of judicial supervision, Defendant has proven that no conditions of supervision can assure his appearance. Because Defendant poses a serious risk of flight, and because no conditions can assure his appearance, the law requires his pretrial detention.

#### A. There Is a Serious Risk That Defendant Will—Once Again—Use His Resources to Flee From Supervision Because He Is Facing a Lengthy Prison Sentence in a District Where He Has No Binding Ties.

The facts of this case plainly demonstrate that Defendant presents a serious risk of flight. Defendant actually began his fraud scheme in this case right after fleeing from a prior term of judicial supervision. In fact, shortly after Defendant was placed on parole for repeatedly sexually

[1] As the Eight Circuit Court recently recognized, the determinations of whether a Defendant poses a serious risk of flight and whether any conditions can assure his appearance "substantially overlap," and courts should consider the Section 3142(g) factors to make those determinations. *United States v. Cook*, No. 23-3147, 2023 WL 8463702, at *3 (8th Cir. Dec. 7, 2023); *see also* 18 U.S.C. § 3142(g) (including relevant factors, such as the nature and circumstances of the crimes and the weight of the evidence against the defendant).

assaulting a fourteen-year-old girl, he fled from his Texas parole officer so that he could start victimizing Faith Walk Ministry parishioners in Paris, Missouri. Not only did Defendant flee from his judicial supervision in Texas, but he also blatantly violated the law by living in Paris, Missouri for years without registering as a convicted sex offender. It was here in Missouri—where Defendant was illegally living as an unregistered sex offender on the run from his parole officer—that he began his years-long, million-dollar fraud scheme. Without any regard for his parole conditions or sex-offender registry requirements, Defendant was able to execute his fraud scheme by masquerading as a faithful, trustworthy, and law-abiding church minister. To this day, Defendant continues to openly flout sex-offender supervision requirements by living in different communities throughout the United States without registering as a sex-offender.[2] In short, by fleeing from judicial supervision and then persistently evading mandatory sex-offender supervision, Defendant has proven that he poses a serious risk of flight. *See United States v. Cook*, 87 F.4th 9920, 925 (8th Cir. 2023) ("Cook absconded from probation for three years . . . Her status as an absconder and her history of failing to appear weigh heavily in favor of finding a serious risk that such person will flee, § 3142(f)(2)(A).") (cleaned up).

On top of Defendant's propensity for flight and evading supervision, he also has the means and motivation to flee from this prosecution. Based on the seriousness of his crimes—and the proof beyond a reasonable doubt establishing his guilt—Defendant is likely to receive a term of incarceration of over twenty years in prison. The likelihood of such a lengthy prison sentence—combined with Defendant's utter lack of binding ties to this district—demonstrates his incredible motivation to flee. *See United States v. Abad*, 350 F.3d 793, 799 (8th Cir. 2003) ("Abad faces a

---

[2] In 2020, the Eighth Circuit confirmed the seriousness of this offense when it held knowingly failing to register is a crime involving moral turpitude, pointing to the "'serious risk involved in a violation of the duty owed by this class of offenders to society.'" *Bakor v. Barr*, 958 F.3d 732, 737 (8th Cir. 2020) (citing *In re Tobar-Lobo*, 24 I. & N. Dec. 143 (BIA 2007)).

maximum sentence of 30 years, *see* 18 U.S.C. § 2423(b), which reduces the significance of the surety amount and weighs strongly in favor of a finding Abad would be a flight risk."). Combined with Defendant's once-in-a-lifetime motive to flee, he unquestionably has the means to do so. His actions in this case conclusively demonstrate that point. In fact, through his fraud scheme, Defendant was able to acquire more than enough money to flee from supervision and travel across the country while evading sex offender requirements. Because Defendant has the means, motivation, and proven inclination to flee, he undoubtedly poses a serious risk of flight. *See United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003) (finding that the defendant posed a "serious risk of flight" where he had "attenuated community ties and a history of fleeing his legal troubles").

### B. Through His Unrelenting Refusal to Follow the Law, Defendant Has Demonstrated That There Are No Conditions That Will Reasonably Assure His Appearance.

Defendant's well-established unwillingness to conform his conduct to the law demonstrates the ineffectiveness of any conditions to assure his appearance. That's true because every pretrial condition that this Court could impose relies—at least to some extent—on Defendant's ability to adhere to the rules of the Court and the laws of the United States. This defendant's proven inability to do so over the last decade shows why detention must be imposed.

An examination of Defendant's history and characteristics reveals that his current federal case is by no means his first run-in with the law. In fact, he was sentenced to prison in 2014 for repeatedly sexually assaulting a fourteen-year-old girl. After he was placed on parole for his heinous criminal conduct—and after he fled judicial supervision to Paris, Missouri—Defendant was indicted for failing to register as a sex offender. Despite his indictments, despite his conviction, imprisonment, parole, and judicial supervision, Defendant continued to break the law.

Defendant's utter disregard for the rule of law continues to this day. In fact, the United States recently learned that Defendant has been living in Florida for a period of over one month and has failed to report any of this to law enforcement in Missouri or Florida. The sex offender registry exists for an important reason: to monitor the location and conduct of those who have harmed victims and pose a risk to society. By knowingly failing to register—as he has done in the past—Defendant is committing yet another felony offense and demonstrating a flagrant disregard for the rule of law. *United States v. Goree*, No. 19CR2661NEBKMM, 2020 WL 490995, at *4 (D. Minn. Jan. 30, 2020) ("Goree has demonstrated a disregard for authority by failing to register in Minnesota under SORNA.").

During his arrest on the charges in this case in the Northen District of Florida, Defendant continued to demonstrate his disregard for the rule of law. Instead of complying with the orders of Deputy United States Marshals, Defendant resisted arrest, and the Deputy United States Marshals who made the arrest had to do so through physical force. Such undeterred criminal conduct demonstrates that no set of conditions can assure his appearance. *See United States v. Dimmick*, 82 F. Supp. 3d 866, 870 (N.D. Iowa 2015) ("This variety of criminal offenses and violations of supervision requirements strongly supports the Government's position that Dimmick poses a risk of flight . . . while also making it appear unlikely that Dimmick would comply with any conditions of release in this case.").

## II. Even if Conditions Could Assure Defendant's Appearance—Which They Cannot—Defendant Still Must Be Detained Because No Conditions Can Protect Against Defendant's Sexual and Financial Exploitation of Those Who Believe in Him.

Under the Bail Reform Act, the Court "shall order the detention of" Defendants like Kenneth C. Sparks III "[i]f, after a [detention] hearing . . . the [Court] finds that no condition or combination of conditions will reasonably assure the . . . safety of any other person and the

community." 18 U.S.C. § 3142(e)(1). The nature and circumstances of Defendant's crimes—along with Defendant's history and characteristics—demonstrate that there is no single condition, nor are there any combination of conditions, that will prevent Defendant from exploiting vulnerable parishioners to commit fraud and sexual assault.

As the Indictment makes clear, Defendant preyed upon a population of people vulnerable to his influence to fraudulently obtain over one million dollars of funds meant to provide relief to small business owners struggling during the pandemic. Capitalizing upon a program meant to provide emergency relief during a worldwide health crisis, Defendant perpetrated crimes against people he knew personally and parishioners who put their trust in him. Breaking their trust and violating their friendship, Defendant stole unsuspecting parishioners' identities—and upended their lives—all so that he could get rich off of taxpayer money. And he did all of it while under judicial supervision.

Defendant understood the influence that he had over parishioners because he had previously abused that very same influence to repeatedly sexually assault a fourteen-year-old parishioner. As his prior conviction makes clear, Defendant forced a fourteen-year-old member of his parish to have sex with him by exploiting her faith in God and respect for authority. Just like he did with the parishioners in Paris, Missouri, Defendant threatened to use his religious authority and rank to harm his fourteen-year-old victim if she reported his crimes. The striking similarities in which Defendant committed his fraud and his sexual assaults over the course of a decade demonstrate that he poses a clear and present danger to any community that he calls home.

That danger is only increased by Defendant's ongoing refusal to comply with the sex offender registration requirements. As Defendant knows well, those requirements were specifically put in place to stop people like him from preying upon vulnerable children. By

constantly evading those requirements, Defendant can continue exploiting vulnerable members of his congregation.

In sum, Defendant's previous bond and parole violations illustrate an utter lack of respect for the law. Simply put: the threat of detention has not and will not dissuade Defendant from continuing to engage in a pattern of manipulative and fraudulent criminal conduct. Therefore, because there are no conditions that can assure the safety of the community from Defendant, this Court should order pre-trial detention under the Bail Reform Act.

## CONCLUSION

Defendant must be detained under the Bail Reform Act because he poses a serious risk of flight and no conditions can assure his appearance. But even if conditions could assure Defendant's appearance—which they cannot—Defendant must still be detained under the Bail Reform Act because no conditions can assure the safety of the community from Defendant.

Respectfully submitted,

SAYLER A. FLEMING
UNITED STATES ATTORNEY

*/s/ Derek J. Wiseman*

DEREK J. WISEMAN
ASSISTANT UNITED STATES ATTORNEY
Thomas F. Eagleton Courthouse
111 South Tenth Street, 20th Floor
St. Louis, Missouri 63102
(314) 539-2200